IN THE MATTER OF THE ESTATE OF JAMES W. CUDWORTH,
DECEASED.

[No. 20,137; April 30, 1900.]

**Community or Separate Property.—A Declaration by a Testator in His Will** that the property disposed of is his separate estate is not conclusive.

Knight & Heggerty and Charles J. Heggerty, for Royal Wallace Cudworth, adult son.

Henley & Costello and Barclay Henley, for Johanna Cudworth, widow.

A. N. Drown, for Gay Allender Rosenberg, executor.

COFFEY, J. James W. Cudworth died on the twelfth day of May, 1898, in San Francisco, where he had resided for virtually half a century. At the time of his death he was about seventy-three years of age and had lived with his family for a long period at 2018 Union street. His family consisted of his wife, Johanna Cudworth, and their two children, Royal Wallace Cudworth and Emory Ahlers Cudworth, aged, respectively, twenty and sixteen years at the date of his demise.

At the time of his death Cudworth owned several parcels of real estate in San Francisco, and also sundry stocks, mortgages, promissory notes, goods and chattels and cash money, and other personal property, of the total value, according to appraisement, of $138,325.35; real estate and improvements, $79,850.00, and personal property, $58,475.35.

On November 11, 1884, he made a will, a copy of which is here inserted with the codicil thereto dated May 11, 1893:

                "WILL.

"I, James W. Cudworth, a resident of the City and County of San Francisco, State of California, being of the age of sixty (60) years and of sound and disposing memory, and acting without any menace, fraud, duress or undue influence do make, publish and declare this to be my Last Will and

Testament, hereby revoking all former wills by me at any time made;

"I. I direct that all my just debts, the expenses of my funeral and last illness, and the cost of purchasing and improving a suitable place for my burial, and also of a proper monument or stone to mark the place of my interment, be paid as soon after my decease as shall be practicable.

"II. I certify and declare that all the property of which I am now possessed, whether real or personal, was owned by me before my marriage with my present wife, or consists of, or has been purchased with, the rents, issues and profits of the property which I owned before such marriage; and that so it is all my separate property.

"III. The lot of land situated on the northerly side of Union Street, between Buchanan and Webster Streets, in the City and County of San Francisco, State aforesaid, having a frontage of sixty-eight (68) feet and nine (9) inches on Union Street, by a uniform depth Northerly of One hundred and thirty-seven (137) feet and six inches, together with the dwelling house thereon, and the appurtenances thereof, the same being the premises now occupied as the home of myself and my family, I give and devise and bequeath to my wife Johanna Cudworth, for and during the period of her natural life, or until she shall remarry, the same to be used during such period as a home for herself and my children and for the children of my said wife by her former marriage; upon her marrying again, or in case she shall not remarry, then upon her death, I give, devise, and bequeath the said property, and all thereof, unto my children Royal Wallace Cudworth and Emory Ahlers Cudworth, and to the survivor of them, in case both should not then be living, and to their heirs forever; Provided, However, that if, upon the remarriage or death of my wife, one of my said children shall be dead, but shall have left issue, then the issue of such deceased child shall take the share which its parent would have taken if living.

"IV. All the rest, residue and remainder of my estate, real and personal and wheresoever situated, I give, devise and bequeath unto my said children Royal Wallace Cud-

worth and Emory Ahlers Cudworth, the same to be divided equally between them, share and share alike; in case only one of my said children shall survive me, then I give, devise and bequeath to him, and to his heirs forever, all of the said rest, residue and remainder of my estate; Provided, However, that if the deceased child shall have left issue then surviving, the issue of such deceased child shall take the share which its parent would have taken, if living at the time of my decease.

"V. In case I die, leaving neither child nor issue of any deceased child, me surviving, then and in that case I give, devise and bequeath my estate as follows, viz., the equal one-third (⅓) part thereof to my said wife Johanna Cudworth, or in case she shall not survive me, to her descendants, to be divided among them equally, by right of representation and not per capita; the equal one-third (⅓) part thereof to the heirs of my deceased wife Olive Powers Cudworth; and the remaining one-third (⅓) part thereof, to my heirs at law, according to the law of succession of the State of California.

"VI. I nominate, constitute, and appoint my brother, A. W. Cudworth and my friend J. P. M. Perham, to be the executors of this my will; and I will and direct that no bonds or other security shall be required to be given by them, or on their behalf, either upon their appointment as such Executors, or upon the performance by them of any act relating to the administration of my estate: I also authorize and empower them, or such of them as shall qualify and act, to sell any and all property belonging to my estate, whether real or personal, at public or private sale, for cash or on credit, with or without notice, in such manner and upon such terms as to them shall seem best, and without applying to any Court, officer or tribunal for any order, permission, power or authority to do so; also to invest and reinvest, in such manner as to them shall seem proper, all proceeds of such sales and all moneys which may be in their hands derived from my estate, until the final settlement of the administration of the same.

"In testimony whereof, I have hereunto set my hand and seal at said City and County of San Francisco, this 11th day November, A. D. 1884.

"JAMES W. CUDWORTH. (Seal)

"Witnesses:

"A. N. DROWN, Residing at 1722 Vallejo Street, San Francisco, Cal.

"CYRUS W. CARMANY, Residing at No. 923 Jackson Street, San Francisco, Cal.

"The foregoing will written on this and the three preceding pages, was on this —— day of November, 1884, at the City and County of San Francisco, State of California, subscribed at the end thereof by James W. Cudworth, the testator therein named, in the presence of us, and of both of us; and the said testator thereupon, and at the time of so subscribing the same declared to us that said instrument is his will; we thereupon, then and there, at his request, and in his presence attested the execution thereof as witnesses, and each signed his name at the end of said will as a witness.

"San Francisco, November 11th, 1884.

"A. N. DROWN,

"Residing at 1722 Vallejo Street, San Francisco, Cal.

"CYRUS W. CARMANY,

"Residing at No. 923 Jackson Street, San Francisco, Cal.

"CODICIL.

"Inasmuch as J. P. M. Perham, one of the Executors named in the foregoing will has died since the execution thereof, I hereby nominate and appoint in his stead as co-executor thereof with my brother A. W. Cudworth, Gay Allender Rosenberg, of the City and County of San Francisco and do make the same provision concerning the giving of bonds by him and do confer upon him the same power and authority, as in said will is provided concerning said Perham and said A. W. Cudworth.

"As thus remodified I republish said Will and declare the same to be my Last Will and Testament.

"In Witness whereof I have hereunto set my hand and affixed my seal at San Francisco in the State of California

this eleventh day of May, A. D. 1893 in the presence of two witnesses.

"JAMES W. CUDWORTH. (Seal)

"Witnesses:

"A. N. DROWN, Residing in San Francisco, Cal.

"J. F. LEICESTER, Residing at San Francisco, Cal."

These instruments were drawn by one of the subscribing witnesses, Mr. Albert N. Drown, a practicing lawyer in this city and county for more than thirty years, who testified at the time of probate that the testator was at the dates of the will and codicil, and for many years next prior to the death of decedent had been his client and was well known to him.

Mr. Drown testified that the documents were in his handwriting and were prepared by him at the request of testator, and in accordance with his instructions and wishes.

On the second day of June, 1898, these papers were admitted to probate and letters testamentary thereupon were issued to Gay Allender Rosenburg, the person named in the codicil, who was also the son-in-law of the widow of the testator, having been married to one of the two daughters by her former marriage, to which allusion is made in the third clause of the will. Cudworth himself had been married twice, as appears by the fifth clause, but there was no issue of that union, and on September 13, 1876, he intermarried with Johanna, with the result of the birth of the two boys, Royal and Emory.

The petition for probate of will was by A. W. Cudworth and G. A. Rosenberg, the executors named therein; A. W. Cudworth subsequently renounced right to letters and Rosenberg thus became sole executor.

The usual proceedings in probate administration were then had including the making and return to the court of "a full, true and correct, inventory and appraisement of all of the estate of said decedent" by the executor on July 15, 1898, in which it is recited that "all and singular the property and estate mentioned or described in the foregoing inventory was claimed by said James W. Cudworth to be his separate property; and all of the same was, as far as can be ascertained by said executor, the separate property of said decedent."

The same executor in his report accompanying final account and petition for settlement and for final distribution makes the following recital.

"That at the date of the death of said decedent, and long prior thereto, the said decedent and said Johanna Cudworth were married and were husband and wife, and living and cohabiting together as such; that, as your petitioner is informed and believes, and so states, a large part of the property and estate of which said decedent died seised or possessed was acquired during the marriage of said Johanna Cudworth and said decedent, and whilst they were husband and wife, and was the community property of said decedent and said Johanna Cudworth; but 'that your petitioner is unable to ascertain or determine just what proportion, or how much, of the property belonging to said decedent or his said estate was or is such community property."

The attorney of record for the executor is the same gentleman who drew the will, as testified to by him, and who drew and signed as such attorney the petition for distribution, and whose careful and accurate conduct as attorney is manifest in all his work.

The widow applied for a homestead July 20, 1898, selecting the same parcel of property described in the third clause of the will and therein devised to her for life or until remarriage as a home for herself and her children by both marriages. This was and had been the home and homestead of decedent and family for many years, although not made such by statutory selection during his lifetime; but the widow applied to the court to set apart the same as a homestead for her use and that of the minor children of deceased "out of the real estate belonging to the decedent, as the said testator, in his last will and testament, declared the entire property owned by him to be his separate estate," and on August 4, 1898, her petition was granted and the homestead set apart. Her attorneys were Chickering, Thomas & Gregory.

Now comes the widow and claims that the entire estate was community property, although her husband expressly and solemnly declared in his will, drawn by and under the advice of the able counsel who had been for years his attorney

and who is and has been continuously the adviser of the executor, that all of his property was his separate estate, and disposed of it as such, a life estate being given to the widow in the real property comprising the family home, remainder equally to the two sons.

No matter how express and solemn this declaration may be in form nor how well advised it may be presumed to have been, it does not of itself establish the fact.

Under the advice of the same attorney the executor states in his petition for distribution that a large part of the property and estate was acquired during the marriage of James and Johanna, and was community property; but he is unable to ascertain how much, and leaves that difficulty to be determined by the court.

All of the property belongs to the community unless it can be shown to have been acquired in the way prescribed by the statute for the acquisition of separate property. The evidence shows that the decedent testator owned at the time of his marriage all of the real estate of which he died seised. There were no improvements of consequence on the real estate at the time of decedent's marriage with his second spouse; and I think that the testimony establishes that the subsequent improvements were made with decedent's own money. The real estate and improvements are, therefore, to be considered separate property.

As to the personal property described in the inventory and appraisement, it was all acquired during the community by purchase, and must, in the absence of clear and convincing evidence to the contrary, be held to be community property. In default of proof of such degree the presumption becomes absolute and conclusive.

Although counsel for Royal Wallace Cudworth has presented a most elaborate and ingenious array of figures to support the deduction that it all came from decedent's funds, I think the evidence is too obscure to warrant such conclusion as to the personal property.

The money invested in the personal property cannot be said to have been traced by plain and connected channels to the separate estate of decedent. None of this personalty

was acquired prior to the marriage, and there is no satisfactory proof that it was the product of the proceeds of the sales of property which decedent possessed prior to his second marriage.

---

*This Case was Before* the supreme court in 133 Cal. 469, 65 Pac. 104.

*As to what is Community Property,* see note in 4 Cof. Prob. Dec. 42.